IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., a Colorado limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>TOWER DISTRIBUTION COMPANY, LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

P;

      Plaintiff DISH Network L.L.C. ("DISH"), by its undersigned counsel, files this Complaint for Breach of Contract and alleges against Tower Distribution Company, LLC ("Tower") as follows:

## NATURE OF ACTION

      1.     DISH provides satellite television programming services to subscribers throughout the United States through contracts called subscriber agreements. DISH generally does not own the television programming that it distributes to its subscribers but instead licenses the rights to distribute programming. As of March 31, 2016, DISH had approximately 13.874 million pay-TV subscribers.[1]

      2.     Tower owns and operates the Superstation WGN service, now known as WGN America, consisting of the signal of television station WGN-TV, Chicago, with certain substitute programming inserted, which is available throughout the United States (the "Tower

---

[1] This figure includes subscribers to DISH's Sling TV and Sling International services, which provide television programming via the Internet.

Programming"). Tower, as a content producer, is not a competitor with DISH. DISH instead competes with other television service providers like DirectTV and Comcast.

3. DISH, through now-expired contractual agreements with Tower, had the right to distribute Tower Programming to its subscribers throughout the country. Once DISH's contracts with Tower expired on June 12, 2016, DISH lost the right to distribute – and no longer distributes – Tower Programming.

4. As the expiration date of the DISH-Tower contracts approached, DISH and Tower (through representatives of Tower's sole member, Tribune Broadcasting Company, LLC ("Tribune")) engaged in a lengthy negotiation over a possible new agreement. The negotiation was unsuccessful. In a last-ditch bid to force DISH to accept its terms, DISH is informed and believes, and thereon alleges, that Tower created and broadcast, via its channels, disparaging content regarding DISH, its services and its performance. The campaign launched by Tower with these commercials cast DISH in an extremely negative light – Tower claims that DISH has not acted in good faith, that its performance and services are the worst in the industry, and even that DISH is a "disgusting" company.

5. Tower's negative commentary about DISH clearly violates its agreements with DISH. The most recent agreement between DISH and Tower, in effect between August 11, 2015 and June 12, 2013, explicitly prohibited "Tower/WGN Cable Network" from broadcasting "any advertisement, promotion or message [] that in any way disparages DISH[.]" Before its agreements with DISH expired, Tower aired numerous commercials on its WGN Cable Network that plainly disparaged DISH.

6. Tower's publication of the extremely negative and disparaging statements about DISH on its WGN channels has caused actual harm to DISH. Among other things, DISH's

subscribers flood DISH's customer service lines with questions about the Tower messages, some subscribers cancel their DISH subscriptions or prospective subscribers elect not to sign up with DISH, and DISH's goodwill as a reliable service provider is eroded. Tower deliberately and purposefully breached its agreements with DISH. These material breaches of the contacts are not capable of being cured because, among other reasons, once a customer changes service providers, DISH cannot get them back. DISH has incurred substantial damages as a result of Tower's prohibited messages.

## PARTIES

7. DISH is a Colorado limited liability company with its principal place of business in Englewood, Colorado. DISH's sole member is DISH DBS Corporation, a Colorado corporation with its principal place of business in Englewood, Colorado.

8. DISH is informed and believes, and thereon alleges, that Tower is a Delaware limited liability company with its principal place of business in Chicago. The sole member of Tower is Tribune, a Delaware limited liability company with its principal place of business in Chicago.

## JURISDICTION AND VENUE

9. The Court has jurisdiction under 28 U.S.C. § 1332(a), because the parties are citizens of different states and because the amount in controversy exceeds $75,000.

10. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this Court because Tower maintains its principal place of business in Chicago and this Court therefore has *in personam* jurisdiction over Tower.

**FACTUAL BACKGROUND**

**The Parties' Agreements Prohibit Tower's Messages**

11. DISH (through its predecessor entity, EchoStar Satellite Corporation) and Tower were parties to a Superstation WGN Distribution Agreement (the "Distribution Agreement"), effective as of April 12, 2001. The Distribution Agreement governed DISH's distribution via satellite of the Tower owned and operated Superstation WGN station, which consisted – in broad terms – of the signal of television station WGN-TV Chicago. The parties amended and extended the Distribution Agreement through three amendments, dated January 1, 2007; June 9, 2008; and June 13, 2013. But for the particular provisions added or revised by the amendments, all other terms of the original Distribution Agreement survived and continued to govern the parties' contractual relationship. One provision that has survived and remains in force from the Distribution Agreement is the attorneys' fee provision in Section 10(e):

> If any court proceeding is instituted to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to recover its court costs and reasonable attorneys' fees from the other party.

12. On August 11, 2015, DISH and Tower entered into a Term Sheet, which extended DISH's right to distribute Superstation WGN programming (now called WGN America) through its expiration date of June 12, 2016. The Term Sheet added several new provisions to the Distribution Agreement. As with the amendments, all terms and conditions of the Distribution Agreement not specifically impacted by the Term Sheet continued in full force and effect.

13. Of relevance here, the Term Sheet added a section that provided:

> Tower/WGN Cable Network shall not include in the Service any advertisement, promotion or message: (A) that in any way disparages DISH, any Affiliate of DISH or the Distribution System (either generically as satellite or other technology, or specifically, *e.g.*, as DISH, Blockbuster, Sling TV or any other brand)[.]

"Service" is a defined term in the Term Sheet:

"Service" means and shall be a twenty-four (24) hour a day, seven (7) day a week, satellite-delivered, advertiser-supported cable television programming service now known as WGN America and shall consist of high-quality, professionally-produced, English-language general entertainment programming. For clarity, the Service is referenced above as the WGN Cable Network.

14. The Parties have agreed that the Distribution Agreement (and therefore the Term Sheet) should be construed in accordance with the laws of the State of Illinois.

**Tower Is Bombarding DISH's Subscribers With Disparaging
And Hostile Messages Broadcast Over Tower's WGN Network**

15. DISH and Tower began negotiating a possible renewal of the Distribution Agreement and Term Sheet in May 2016. The parties exchanged several proposals to renew both agreements over the next few weeks, with little success. DISH offered terms for a renewal of the Distribution Agreement, as well as several short-term extensions so the parties could continue negotiating. Tower did not respond, instead creating and distributing content disparaging DISH as a negotiation tactic in an attempt to force DISH to accept Tower's terms.

16. DISH is informed and believes, and thereon alleges, that Tower began running 30-second commercials regarding DISH on its WGN Cable Network approximately one week before the Distribution Agreement and Term Sheet expired. There can be no question that these commercials disparaged DISH to its own subscribers, as well as prospective DISH subscribers. The commercials open with the statements "dishturbing," "dishgusting," and "dishappointing," and then inform the viewer that "DISH may force" the Tower Programming off of the subscribers' channel lineup. The commercial goes on to state that the loss of WGN America would be DISH's 13th blackout, and therefore "no wonder Dish gets the worst rating for value." It also displays text that reads "Worst rating by customers." Below are screenshots from one of

the commercials that Tower broadcast over its WGN Cable Network on or about June 9 and 10, 2016:











17. Tower attributes the statements that "Dish gets the worst rating for value" and "Worst rating by customers" to a "Leading Consumer Survey" from 2015. The clear impression left on any reader by this statement is that a "leading consumer survey" had found that DISH had "the lowest rating for value" of any television service provider – in other words, relative to other providers, DISH was the worst in terms of value. Indeed, the statement that reads simply "worst rating by customers" suggests that, vis-à-vis other television providers, DISH is ranked dead last.

18. The statements in Tower's commercial are not just obviously disparaging of DISH – they are deceptive and misleading as well. On information and belief, Tower based the statement on a survey published in 2015 by Consumer Reports. DISH actually ranks *near the top* of that survey relative to other television service providers – DISH is graded in the top five of twenty-four television providers included in the survey. DISH is, in fact, graded higher than virtually all of the other well-known distributors, including AT&T, Cox, Cablevision, Charter, Comcast/Xfinity and Time Warner. Survey participants apparently did give DISH's "value" the

lowest or "worse" grade available, but they gave the *same* grade to twenty of the twenty-four providers included in the survey.[2] Of course, the value that customers receive is directly correlated with the prices that content providers, such as Tribune, charge distributors for their programming. The statement that DISH received "the lowest rating for value" is misleading, and specifically designed by Tower (and/or its parent company, Tribune) to encourage DISH subscribers to terminate their contract with DISH and choose any of the other, purportedly higher-ranked providers. Similarly, the statements in the commercial that DISH gets the "worst rating by customers" is clearly false in the sense in which it is intended to be understood by current and prospective DISH subscribers – Tower's targeted recipients – as it suggests DISH was the lowest-ranked provider when it actually was among the highest-ranked.

19. As a result of these disparaging and deceptive statements, many subscribers have called DISH, and will continue to call DISH, to ask questions. The commercials greatly increase the volume of phone calls that DISH's customer service agents manage in a given day and require DISH to increase its staffing levels in order to manage the call volume.

20. The disparaging commercials broadcast by Tower before June 12, 2016 also caused – and will continue to cause – subscribers to cancel DISH services. DISH is one of several television providers that a subscriber can choose from. As a result, DISH's reputation and goodwill are crucial to its efforts to obtain new subscribers and retain current subscribers. The commercials damage DISH's reputation and goodwill, and lead potential and current subscribers to select a different service provider. After a customer changes service providers,

---

[2] The 2015 survey is no anomaly. Consumer Reports just released its latest survey on June 15, 2016, and DISH is tied for the fifth-highest rated television provider out of the thirty providers ranked in the survey, outpacing virtually every other well-known provider in the industry. DISH again received a "worse" rating by customers for value, the lowest possible grade, but so did twenty-eight of the thirty providers in the survey.

moreover, it is often very unlikely that DISH will get them back. Tower's commercials, aired in blatant breach of the Distribution Agreement and Term Sheet, therefore harm DISH by causing current customers to terminate their contracts with DISH and prospective DISH subscribers to choose a different television provider.

21. Tower's commercials are intended to confuse and anger DISH subscribers. Tower's sole purpose in orchestrating the effort to distribute the Tower Programming is to gain an upper hand in its contract renewal negotiations with DISH.

## FIRST CLAIM
**Breach of the Distribution Agreement and Term Sheet**

22. DISH incorporates the allegations in Paragraphs 1-21 as though fully set forth herein.

23. DISH and Tower were parties to a contract – the Distribution Agreement as amended by its amendments and the Term Sheet – under which Tower provided DISH with the right to distribute Tower Programming subject to express terms and conditions. DISH has performed all its material obligations under the Distribution Agreement and Term Sheet.

24. Under the express terms of the Term Sheet, Tower is prohibited from engaging in any public communications or messaging over the WGN Network that disparages DISH in any way.

25. Before the Distribution Agreement and Term Sheet expired, Tower released a torrent of commercials over its WGN Network that disparaged DISH, including by referring to DISH as a "disgusting," disappointing," and "disturbing" company and – misleadingly – claiming that DISH is the "worst rated" television provider by customers.

26. As a result of these commercials, DISH has suffered actual damages, including, but not limited to, increased costs associated with staffing additional customer service

representatives, lost revenue from subscribers who have decided to cancel their subscriber agreements with DISH out of concern raised by the Prohibited Messages, lost revenue from prospective customers who elected not to purchase DISH services, and damage to DISH's goodwill and reputation.

27. Tower's distribution of these commercials constitute a material breach, which cannot be cured.

**PRAYER FOR RELIEF**

WHEREFORE, DISH prays for relief on its First Claim as follows:

1. Monetary damages, including damage arising from DISH's increased expenditures, lost revenue, and damages to DISH's goodwill and reputation, in an amount in excess of $75,000;

2. Costs of suit;

3. Attorneys' fees and costs, as provided in the Distribution Agreement; and

4. Any other such relief as the Court deems just and proper.

DATED: June 20, 2016

By:   /s/Richard R. Patch
Richard R. Patch (CA Bar No. 088049)
Rees F. Morgan (CA Bar No. 229899)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 391-4800
Facsimile: (415) 989-1663
Email: ef-rrp@cpdb.com
        ef-rfm@cpdb.com

Attorneys for Plaintiff
DISH NETWORK L.L.C.